UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DONNIE BEACH, ) | |
| ) | |
|     Plaintiff, ) | Case No. 3:24-cv-00061-GFVT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| BOJANGLES' RESTAURANTS, INC., ) | **&** |
| ) | **ORDER** |
|     Defendant. ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Employees can be fired for many reasons, but not on account of their race. Yet that is just what Plaintiff Donnie Beach contends happened to him when he was fired from Bojangles' Restaurant. Beach presents a direct evidence theory based on a text message sent to him by his supervisor that can plausibly be interpreted as containing a racial slur. Now Defendant Bojangles' has moved to dismiss, arguing that the ambiguity of the text at issue prevents Beach from proceeding under his direct evidence theory. For the reasons set out below, the Defendant's Motion to Dismiss **[R. 5]** is **DENIED**.

I

Donnie Beach is an African-American man who was hired to work at the Shelbyville, Kentucky Bojangles' Restaurant as a cook in June 2024. [R. 1-2 at 5.] Beach was originally hired for a 40-hour work week, but on Friday July 19, 2024, the District Manager, a black woman named Tracy Sudderth, told him his hours would be cut on account of the store not making enough money. *Id*. She further informed him that someone from the store would reach out with his new schedule. *Id*. On Sunday July 21, 2024, Beach reached out to his store

manager, a white woman named Erica Stratton, about his new schedule. *Id*. at 6. In response, Stratton told Beach he was being terminated, effective immediately. *Id*. When Beach asked why he was being let go, he was told it was because he had failed to show up for work on Saturday July 20th. *Id*. Beach protested, asserting he had not been told of the new schedule and wanted to speak with Suderth to clear up any misunderstandings. *Id*. He was told Suderth was out of town and unavailable for a week, to which Beach responded that he could not wait a week. *Id*. In a follow-up text on Monday July 22, 2024, Stratton reaffirmed Beach's termination and stated "I'm sorry you are no less Niger employed with Bojangles per Tracy this was your second and third chance." *Id*. at 6, 8.

      Beach thereafter brought suit in Kentucky's Shelby Circuit Court, before the case was then removed to this Court, alleging racial discrimination in violation of the Kentucky Civil Rights Act. [R. 1.] He proceeds solely under a direct evidence theory based on the text he received from his store manager, Erica Stratton. Bojangles has now moved to dismiss, contending the text message from Stratton is insufficient under Beach's direct evidence theory. In Bojangles' view, the message can be interpreted in more than one way, rendering the text not direct evidence under current case law. [R. 5 at 2-5.] Their theory is that Stratton merely mistyped "no longer" rather than the racial slur Beach alleges Stratton misspelled. *Id*. at 4. By contrast, Beach notes that at this stage the Court must draw inferences in his favor, leaving the text to say "one less [racial slur]…" [R. 7 at 5-7.] Under that conception of the facts, the racial animus Stratton displayed toward Beach is unambiguous. *Id*. at 10.

## II

      A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiffs' complaint. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must

2

"construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, a court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555).

### A

The KCRA prohibits the discharge of any individual because of his or her race. Ky. Rev. Stat. § 344.040(1)(a). The KCRA "mirrors Title VII of the Civil Rights Act of 1964" and discrimination claims brought under the KCRA are analyzed the same way as those brought under Title VII. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000). In order to establish a Title VII employment discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment. *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 572 (6th Cir. 2000). Here, Beach is proceeding under a direct evidence theory. [R. 7 at 4-5.] "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

Here Bojangles argues that the text on which Beach relies is not direct evidence. This is

3

because "direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). In their view, the very fact that the text sent by Stratton can be interpreted in two different ways – one racist, the other benign – means it cannot, as a matter of law, constitute direct evidence of discrimination. [R. 9 at 2.]

Superficially, Bojangles presents a decent argument. It is true that "[d]irect evidence of discrimination is rare because employers generally do not announce that they are acting on prohibited grounds." *Erwin v. Potter*, 79 F. App'x 893, 896–97 (6th Cir. 2003). And the case law makes clear that "[w]hatever the strength of [the] evidence, it is not 'direct' evidence [if] it admits more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact." *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 471 (6th Cir. 2005) (quoting *Norbuta v. Loctite Corp.,* 1 Fed. Appx. 305, 313 (6th Cir. 2001) (unpublished table decision)). It seems to follow then that, because Stratton's text can be read two ways, Beach's direct evidence theory must fail. Nevertheless, the Court thinks such a view is inapt as applied in this case.

First, at this point the Court must take Beach's plausible factual inferences as true. Thus, as of now, Stratton sent Beach a text message during the course of terminating him that reflected racial animus through the usage of a racial slur directed at Beach. At summary judgment the situation and inferences may shift, but that stage of the proceedings has not yet been reached. Second, the Court considers the nature of the ambiguity in this case to operate rather differently than the ambiguities present in many of the cases Bojangles relies on. For example, in *Kroger*

4

the statements at issue were as follows:

> (1) [Manager's] comment expressing concern about the potentially detrimental effect on business of having an African–American comanager, (2) [Manager's] remarks to the store's department heads regarding Johnson's lack of ability and intellectual shortcomings, (3) [Manager's] notation and comments in connection with Johnson's performance evaluation that he lacked initiative, and (4) [Manager's] suggestion that Johnson should consider other positions with Kroger because he lacked "an analytical mind."

*Kroger*, 319 F.3d at 865.  In the *Kroger* Court's view, none of these statements were direct evidence of discrimination because they all required the factfinder to draw inferences connecting the comments to racial animus felt by the plaintiff's supervisors.  *Id*.  Bojangles points to *Scott v. Potter*, 182 F. App'x 521 (6th Cir. 2006), on similar grounds.  Yet in *Scott* the discriminatory statement at issue was the following remark made by the plaintiff's supervisor: "Why don't you retire and make everybody happy."  *Id*. at 526.  The *Scott* Court noted that had the plaintiff's supervisor "made a slightly different remark—'Why don't you *quit* and make everybody happy'—it would obviously not be direct evidence of age discrimination—the hypothetical statement does not refer to age or anything related, even tangentially, to age."  *Id*.  The *Scott* Court then analyzed the heavy lifting done by the word "retire" and ultimately concluded that a factfinder would need to make a number of inferences for "retire" to be a proxy for age discrimination.  *Id*.

By contrast, the "inferential leap" Bojangles contends exists here is of a very different kind.  The text message at issue reads "I'm sorry you are no less Niger employed with Bojangles per Tracy this was your second and third chance."  [R 1-2 at 8.]  Given the Court's knowledge of grammar and the general context of the case, it seems safe to assume – at least at this point – that Stratton did not literally intend the seemingly nonsensical "no less Niger" portion of her message.  A factfinder would admittedly have to infer what she did intend to type – innocuous commiseration or racial slur.  But, assuming the factfinder reaches the same conclusion this

5

Court must at the motion to dismiss stage – that Stratton actually intended to type "one less [racial slur]" – there would essentially be no inferential leap at that point. Unlike the vague comments at issue in *Kroger* and *Scott*, a white supervisor calling her black employee, whom she is firing, an unambiguous racial slur is enough evidence for a factfinder to conclude racial animus infected that decision-making process. In other words, it would "require[] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn* 176 F.3d at 926. Adopting Bojangles' view in this case would seem to create a scenario where a racially motivated employer is granted a get-out-of-jail-free-card for their impermissible discrimination simply because they made a typographical error. Direct evidence is not alchemically transmuted into circumstantial evidence simply because a writer accidentally drops a G from a well-known racial slur.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Defendant's Motion to Dismiss **[R. 5]** is **DENIED.**

This the 4th day of March, 2025.

Gregory F. Van Tatenhove
United States District Judge